UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_3/28/2023___
```

DEVANAND PERSAUD,

                              Plaintiff,

              -against-

CITY OF NEW YORK, and SHERIF
SOLIMAN, WILLIAM MARSHALL, and
ARI LIEBERMAN, *in their individual and
official capacities*,

                              Defendants.

1:22-cv-02919 (MKV)

<u>MEMORANDUM OPINION
AND ORDER DENYING
MOTION TO DISMISS</u>

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff Devanand Persaud, a former accountant for the City of New York ("the City"), brings this action against the City, Sherif Soliman, William Marshall, and Ari Lieberman (collectively, "Defendants"), alleging unlawful First Amendment retaliation under 42 U.S.C. § 1983 ("Section 1983"). Defendants move to dismiss Persaud's claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss is DENIED.

<u>BACKGROUND</u>[1]

Persaud, a naturalized United States citizen of Guyanese national origin, was hired by the City's Department of Finance ("DOF") in January 2017. Complaint ¶¶ 9, 18 [ECF No. 1] ("Compl."). Persaud consistently received "good" and "very good" performance evaluations and was promoted in September 2019. Compl. ¶¶ 21, 22, 24.

Persaud's father, Steve, is also a naturalized United States citizen of Guyanese national origin. Compl. ¶ 11. While Persaud has few remaining ties to Guyana, Steve follows Guyanese political news and regularly shares his ideas about these issues on Facebook. Compl. ¶¶ 12, 13,

---

[1] The facts are taken from the Amended Complaint, and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

40.  Persaud and Steve share a computer at their home, and they also have the same make, model, and color iPhone.  Compl. ¶ 57.

A large quantity of recoverable oil was recently discovered off the shore of Guyana. Compl. ¶ 27.  The oil discovery "fanned the political flames" in the country, resulting in a vote of no-confidence in Guyana's then-president David Granger.  Compl. ¶¶ 30, 31.  Granger lost the Guyanese presidential election on March 2, 2020 to Irfaan Ali.  Compl. ¶¶ 33, 37.  Steve believed that Granger was corrupt, while Ali would foster democratic reform.  Compl. ¶ 39.

In October 2020, an article titled "Gutter work" was published on Facebook by a Guyanese newspaper.  Compl. ¶¶ 42, 53.  The article was a "social commentary about workers in Guyana." Compl. ¶ 51.  The article described a Guyanese man who was offended after being offered a job to clean gutters, "because Guyana now being an oil producing country, he believed he should have been offered a job pumping oil."  Compl. ¶¶ 45, 46.  Believing he was logged into his own Facebook account, Steve authored the following comment in response to the article:

> That is only work suitable for those ghetto rats!  Oil jobs are for decent, hardworking, respectable people who vote for democracy and progress!  The oil money belongs to supporters of democracy!
>
> Those who didn't vote for democracy on March 2, 2020 elections should not get one cent of benefit from oil wealth or oil jobs!
>
> Let those ghetto rats go to Granger and Harmon[2] for jobs!

Compl. ¶¶ 59–61.  But Steve was mistaken—the post was actually made from Persaud's Facebook account.  Compl. ¶ 60.

The DOF received four complaints from members of the public in response to the Facebook post.  *See* Declaration of Zachary T. Ellis ("Ellis Dec.") Exhibit A 3 [ECF No. 27-1] ("ALJ R&R"). Within a few days of the post, the City sent Persaud a letter, requesting that he "appear and testify"

---

[2] Joseph Harmon was previously a high-ranking minister in Guyana aligned with Granger.  *See* Compl. ¶ 32.

at the DOF's Advocate's Office on October 29, 2020.[3]  Compl. ¶ 71; ALJ R&R 6.  Persaud

repeatedly asked for more information about why he was being asked to testify but received none.

Compl. ¶¶ 73, 74.  Persaud did not appear on October 29.  Compl. ¶ 74; ALJ R&R 6.  Persaud was

later asked to schedule an interview with the DOF's EEO Office, which he also neglected to do.

ALJ R&R 4.

The DOF thereafter served Persaud with disciplinary charges under Section 75 of the New

York Civil Service Law.  ALJ R&R 1.  Specifically, Persaud was charged with violating the DOF's

Code of Conduct by: (1) engaging in conduct that might arouse ill will against an individual or

group based on national origin or ancestry, (2) violating the DOF's social media policy and the

City's EEO Policy, (3) failing to appear and testify before the DOF's Advocate's Office,

(4) engaging in conduct that was prejudicial to good order and discipline, (5) engaging in conduct

that was likely to bring the City or DOF into disrepute, and (6) failing to cooperate with the DOF's

EEO investigation.  ALJ R&R 2, 6, 7.  Administrative Law Judge Jocelyn McGeachy-Kuls with

the New York City Office of Administrative Trials and Hearings ("OATH") conducted a two-day

hearing on the charges.  *See* Ellis Dec. Exhibit B [ECF No. 27-2] ("Transcript").  Persaud

represented himself at the hearing and suggested that the charges were issued against him in

retaliation for internal complaints he had filed regarding the City's attorneys.  Compl. ¶ 85;

Transcript 11:15–12:11.

The ALJ ultimately sustained all charges against Persaud and recommended his

termination.  *See* Ex. A.  The decision noted that Persaud "argued in his closing statement that the

[DOF] filed these charges in retaliation against him [but Persaud] . . . did not offer any evidence

---

[3] The parties dispute the exact timing.  The Complaint alleges that the letter was sent two days after the post, *see* Compl. ¶ 71, while the ALJ concluded it was sent six days later, *see* ALJ R&R 6.  Resolving this dispute is unnecessary because the Court would reach the same conclusions regardless of whether the letter was sent two or six days after the post.

in support of [this] contention." ALJ R&R 4–5.  Persaud was terminated one week later.  Compl.

¶ 90.  Persaud appealed, but the New York City Civil Service Commission ("Commission") later

affirmed the termination decision.  *See* Ellis Dec. Exhibit C [ECF No. 27-3] ("Com. Op.").

Persaud then filed this Complaint, alleging unlawful retaliation under the First

Amendment.  *See* Compl. ¶¶ 91–93.  Defendants move to dismiss under Rule 12(b)(6).  *See* Motion

to Dismiss [ECF No. 26]; Memorandum of Law in Support [ECF No. 28] ("Def. Mem.").   In

addition to their motion, Defendants provided the Court with the ALJ's decision, the OATH

hearing transcript, and the Commission's decision.  *See* ALJ R&R; Transcript; Com. Op.  The

Court takes judicial notice of these documents.  *See Thomas v. Westchester Cnty. Health Care

Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) ("[T]he Court may take judicial notice of the

records of state administrative procedures, as these are public records, without converting a motion

to dismiss to one for summary judgment." (internal quotation marks and citation omitted));

*Gertskis v. United States EEOC*, No. 11 CIV. 5830 JMF, 2013 WL 1148924, at *9 n.8 (S.D.N.Y.

Mar. 20, 2013) ("The Court may take judicial notice of the transcript of the OATH hearing without

converting Defendants' motions to dismiss into motions for summary judgment.").  Persaud filed

an opposition, *see* Memorandum of Law in Opposition [ECF No. 31], and Defendants filed a reply,

*see* Reply Memorandum of Law [ECF No. 36] ("Reply").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Amended Complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court "must accept as true all of the

allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding a motion to dismiss, this Court "may consider documents that are referenced in the complaint, documents that the [plaintiff] relied on in bringing suit and that are either in the [plaintiff's] possession or that the [plaintiff] knew of when bringing suit, or matters of which judicial notice may be taken." *Arroyo v. Dep't of Educ. of City of New York*, No. 19 CIV. 7416 (ER), 2020 WL 4570380, at *6 (S.D.N.Y. Aug. 6, 2020) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## ANALYSIS

Defendants move to dismiss on two grounds: (1) Persaud's claim is barred by the doctrine of collateral estoppel and (2) Persaud does not plausibly allege that he was terminated because of his perceived protected activity.  Neither ground succeeds.

### I.  Persaud's Retaliation Claim Is Not Barred by Collateral Estoppel

The doctrine of collateral estoppel, or issue preclusion, precludes a party from relitigating a factual or legal issue that the party previously litigated and lost in an earlier action.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979).  Federal courts apply the collateral estoppel rules of the state that rendered the earlier judgment.  *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) (citing *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)).

In New York, "collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455–56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (N.Y. 1985)).  An issue that is "necessarily decided" must have been "actually decided" *and* "necessary to support a valid and

5

final judgment on the merits." *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 153 (2d Cir. 2006). "The burden of showing that the issues are identical and were necessarily decided in the prior action rests with the party seeking to apply issue preclusion." *Kulak v. City of New York*, 88 F.3d 63, 72 (2d Cir. 1996). Courts in this district have afforded preclusive effect to OATH proceedings. *See, e.g.*, *Gonzalez v. City of New York*, 442 F. Supp. 3d 665, 693 (S.D.N.Y. 2020).

Defendants argue that the issue of retaliation was necessarily decided in the OATH proceeding because "the ALJ rejected Plaintiff's contention that the disciplinary proceedings against him were initiated for a retaliatory motive." Def. Mem. 7. That is incorrect.

First, the issue was not *actually* decided because Persaud alleges a different type of retaliation here than he did at the OATH proceeding. At the OATH proceeding, Persaud argued that the DOF retaliated against him because of internal complaints that Persaud had raised regarding the City's lawyers. *See* Compl. ¶ 85; Transcript 11:15–12:11. In contrast, Persaud now alleges that Defendants retaliated against him because of their perception that he had engaged in protected speech by posting the "ghetto rats" comment on Facebook. *See* Compl. ¶ 92. Because Persaud did not raise this claim of retaliation at his OATH hearing, the Court cannot conclude that the ALJ *actually* decided it. *See Broich v. Inc. Vill. of Southampton*, 462 F. App'x 39, 46 (2d Cir. 2012) ("Broich did not raise the defense in the hearing that the charges were illegitimate retaliation for his EEOC charge . . . and the hearing officer did not consider such a defense *sua sponte*."); *Dillon v. Suffolk Cnty. Dep't of Health Servs.*, 917 F. Supp. 2d 196, 215 (E.D.N.Y. 2013) ("[A]t her hearing it does not appear that the Plaintiff raised the defense that the charges were illegitimate retaliation for her protected speech, and the hearing officer did not consider such a defense *sua sponte*."). Although Defendants contend without authority that Persaud's "attempt[] to recast his retaliation claim . . . is not enough to evade the preclusive effect of the ALJ's prior finding," *see*

Reply 5–6, that unsupported assertion is insufficient to carry their burden of establishing that the issues are identical. *See Kulak*, 88 F.3d at 72.

Even assuming the retaliation issue was *actually* decided, it was still not *necessary* to support a valid and final judgment. Under New York law, "[a] section 75 hearing officer's *sole responsibility* is to consider whether the state employee facing charges has been 'incompetent or committed misconduct.'" *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 48 n.11 (2d Cir. 2014) (emphasis added) (quoting N.Y. Civ. Serv. Law § 75(1)). Thus, "the only finding necessary to support a valid judgment in the administrative hearing was that [Defendants were] not *solely* motivated by retaliatory animus against [Persaud] for initiating disciplinary action against him." *Broich*, 462 F. App'x at 46 (citing N.Y. Civ. Serv. Law § 75-b(3)). Indeed, Persaud "can prove First Amendment retaliation *even if* the measures taken by the state were otherwise justified," *Beechwood*, 436 F.3d at 152 (emphasis added). *See, e.g.*, *Broich*, 462 F. App'x at 46 n.4 ("That the SVPD had sufficient justification to bring charges against Broich does not resolve the question of whether they would in fact have brought the charges in the absence of retaliatory animus." (citing *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 & n.8 (2d Cir. 1987)); *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 785 (S.D.N.Y. 2003) ("It is possible that race motivated defendants' decisions to terminate Malave, even though defendants had another articulated basis for the termination that the Article 78 court found to be rational."). Persaud's retaliation claim is therefore not barred by collateral estoppel.

Defendant's reliance upon *Bailey v. Mount Vernon City School District*, No. 17-CV-9973 (KMK), 2020 WL 1528481 (S.D.N.Y. Mar. 30, 2020), is inapposite. *See* Def. Mem. 8; Reply 5–6. There, the district court applied collateral estoppel to an earlier state administrative decision because the hearing officer had "*explicitly* rejected" the same retaliation argument raised in the federal complaint. 2020 WL 1528481, at *11 (emphasis added) (alterations omitted). Moreover,

*Bailey* resolved a motion for *summary judgment*—not a motion to dismiss where all of the plaintiff's allegations must be accepted as true.  This authority is not persuasive or even helpful.[4]

## II.    Persaud Plausibly Alleges He Was Terminated Because of His Perceived Protected Activity

To state a claim for First Amendment retaliation, Persaud must allege that "(1) his speech or conduct was protected by the First Amendment; (2) [Defendants] took an adverse action against him; and (3) there was a causal connection between this adverse action and the protected speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).  Defendants contest only causation, asserting that Persaud "has not set forth any facts from which this Court could plausibly infer that Defendants (mistakenly) believed that he engaged in protected political speech and that Defendants terminated him because of this (mistaken) belief."  Reply 10.

At the pleading stage, Persaud's allegations must only be "sufficient to support the inference that the speech played a substantial part in the adverse action.'"  *Morey v. Somers Cent. Sch. Dist.*, No. 06 CIV. 1877 WCC, 2007 WL 867203, at *11 (S.D.N.Y. Mar. 21, 2007) (quoting *Davis v. Goord*, 320 F.3d 346, 354 (2d Cir. 2003)).  "[A] reasonable inference of a causal connection is all that is required."  *Id.*  Further, causation may be established indirectly by circumstantial evidence.  *See id.*

The Complaint plausibly alleges that Defendants terminated Persaud because of their mistaken belief that he had engaged in protected speech.  Defendants ordered Persaud to "appear and testify" at the DOF's Advocate's Office within days of the Facebook post.  *See* Compl. ¶ 71; ALJ R&R 6.  *See Beechwood*, 436 F.3d at 153 ("Suspect chronology—the close sequence of [speech] and scrutiny—constitutes circumstantial evidence.");  *Morey*, 2007 WL 867203, at *11

---

[4] Similarly, the Second Circuit in *Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019), stated that to prevail "at *summary judgment*," a Section 1983 plaintiff must demonstrate that a reasonable jury could find that "the adverse employment action would not have occurred 'but-for' [unlawful retaliation]."  *Id.* at 214 (emphasis added).

(finding sufficient allegations of a causal connection where plaintiff "alleged a close temporal proximity between his statements and the initiation of disciplinary proceedings"); *Dillon*, 917 F. Supp. 2d at 214 (concluding that plaintiff stated a *prima facie* case of retaliation where "the alleged retaliatory actions all took place within a few weeks of the Plaintiff's protected activities"). Further, at least four of the disciplinary charges brought by DOF directly related to the content of the Facebook post. *See* ALJ R&R 2–5, 7. Accepting Persaud's allegations as true and construing them in the light most favorable to Persaud, as the Court must at this stage, Persaud plausibly alleges that his perceived speech played a substantial part in the adverse action.

Defendants correctly note that "[t]o win," Persaud "must prove an improper employer motive" and to do so, he "will have to point to more than his own conduct to show [his] employer's intent to discharge or to demote him for engaging in what the employer (mistakenly) believes to have been . . . protected[] activities." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 274 (2016). *See* Def. Mem. 11. But Persaud need not prove his case to prevail at this preliminary stage. Indeed, a complaint may proceed beyond a motion to dismiss "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks omitted). The Court therefore declines to dismiss the First Amendment retaliation claim at this early juncture. *See Sheppard v. Beerman*, 18 F.3d 147, 151 (2d Cir. 1994) (reversing dismissal of First Amendment retaliation claim where "the motive behind [plaintiff's] firing in his retaliation claim [was] clearly a question of fact").

## <u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss is DENIED. The Clerk of Court is respectfully requested to terminate docket entry 26.

**SO ORDERED.**

Date:  **March 28, 2023**
      **New York, NY**

                                 **MARY KAY VYSKOCIL**
                                 **United States District Judge**